**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARCUS COLICELLI, ) | |
| (Address to be filed under seal) ) | Civil Action No. 1:26-cv-02850 |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| OFFICE OF PERSONNEL ) | |
| MANAGEMENT, ) | |
| 1900 E Street NW ) | |
| Washington, DC 20415, ) | |
| ) | |
| SCOTT KUPOR, in his official capacity as ) | |
| Director of the U.S. Office of Personnel ) | |
| Management, ) | |
| 1900 E Street NW ) | |
| Washington, DC 20415, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Marcus Colicelli hereby brings this complaint against Defendants the U.S. Office of Personnel Management and Scott Kupor, in his official capacity as Director of the U.S. Office of Personnel Management, stating as follows:

### NATURE OF THE ACTION

1. Congress has directed that federal civilian employees who are called from their civilian jobs to serve the Nation in the reserve components shall not be forced to absorb a pay cut for doing so. The differential pay statute, 5 U.S.C. § 5538, requires the Government to make up the difference between a reservist's military pay and the civilian pay he leaves behind. In *Feliciano v. Department of Transportation*, 605 U.S. 38 (2025), the Supreme Court held that this guarantee applies whenever a reservist serves on active duty while a national emergency is ongoing, and that

no employee must prove a "substantive connection" between his own service and any particular emergency.

2.    Congress also directed who must make that guarantee operational. Section 5538(d) provides that the Office of Personnel Management "shall, in consultation with [the] Secretary of Defense, prescribe any regulations necessary to carry out the preceding provisions of this section." That is a mandatory, non-discretionary duty.

3.    OPM has never discharged it. In the seventeen years since Congress enacted § 5538, OPM has never promulgated a regulation carrying out the statute. It has instead administered the entitlement through a subregulatory document — "OPM Policy Guidance Regarding Reservist Differential under 5 U.S.C. 5538," first issued in December 2009 and since updated four times — which instructs employing agencies that "qualifying active duty does not include voluntary active duty under 10 U.S.C. 12301(d)."

4.    *Feliciano* held that reading contrary to law. Fifteen months later, OPM has not withdrawn or corrected its guidance, has not published a notice of proposed rulemaking, and has not promulgated the regulations § 5538(d) requires. As of the filing of this complaint, the Federal Register contains no document of any kind issued by OPM addressing the reservist differential.

5.    The consequence is not abstract. Plaintiff Marcus Colicelli is an attorney at the Department of Veterans Affairs and a Judge Advocate in the United States Army Reserve. He has been ordered four times to active duty under 10 U.S.C. § 12301(d) — the precise authority OPM's guidance excludes — and his employing agency denied him differential pay on precisely that ground. He remains in the Reserve, remains subject to being ordered to active duty, and remains subject to the same unrevised guidance.

2

6. The Administrative Procedure Act bars agencies from unreasonably delaying action they are required by law to take. 5 U.S.C. § 706(1); *see also id.* § 555(b). Plaintiff seeks declaratory and injunctive relief compelling OPM to issue the regulations § 5538(d) requires, conformed to *Feliciano*, within a reasonable time set by the Court. He does not seek an award of differential pay.

## JURISDICTION AND VENUE

7. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and seeks judicial review of agency action unlawfully withheld or unreasonably delayed within the meaning of 5 U.S.C. § 706(1).

8. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers jurisdiction over all civil actions arising under the laws of the United States, including the APA.

9. The Court has authority to issue declaratory and injunctive relief pursuant to 5 U.S.C. §§ 702 and 706, and 28 U.S.C. §§ 2201–2202. Plaintiff additionally invokes 28 U.S.C. § 1361.

10. No statute commits review of OPM's rulemaking under § 5538(d) to a court of appeals.

11. This action does not seek review of any individual personnel action, does not seek an award of differential pay to Plaintiff, and does not seek any relief against Plaintiff's employing agency. It seeks only to compel OPM to perform the discrete, government-wide rulemaking duty that 5 U.S.C. § 5538(d) imposes on it.

12. Congress did not channel that claim into the administrative review scheme. The Merit Systems Protection Board cannot order OPM to conduct a rulemaking. Indeed, the Federal Circuit has held that 38 U.S.C. § 4324 does not permit a reservist to recover from OPM differential

3

pay owed by his employing agency: § 4324 "does not . . . support an interpretation that a claimant may sustain a claim against OPM for differential pay that should be properly paid by a different agency." *Kluge v. Dep't of Homeland Sec.*, 60 F.4th 1361, 1368 (Fed. Cir. 2023). In *Kluge* the administrative judge dismissed OPM as a respondent altogether and substituted the employing agency. *Id.* at 1364. The Board's remedial authority under § 4324(c)(2) runs to ordering compliance and compensating a claimant for lost wages or benefits in an individual case; it does not extend to ordering OPM to promulgate the government-wide regulations § 5538(d) requires. Congress is presumed not to limit district court jurisdiction where "a finding of preclusion could foreclose all meaningful judicial review," where the suit is "wholly collateral to a statute's review provisions," and where the claims are "outside the agency's expertise." Each consideration points the same way here. *See Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 489 (2010); *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 186 (2023); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994).

13.    Venue lies in this District under 28 U.S.C. § 1391(e)(1) because Defendants are an agency of the United States and an officer of the United States acting in an official capacity, each resides in this District, and a substantial part of the omissions giving rise to this action occurred within this District.

14.    There is no other adequate remedy in a court for the relief Plaintiff seeks here.

## PARTIES

15.    Plaintiff Marcus Colicelli is a Major (O-4) in the United States Army Reserve, Judge Advocate General's Corps, promoted to that grade on June 4, 2024. He currently serves as Senior Defense Counsel of Team 2, Southeast Region, 154th Trial Defense Services Legal Operations Detachment, at 6901 Telegraph Road, Alexandria, Virginia. He is also a federal civilian employee of the U.S. Department of Veterans Affairs, where he serves as an Attorney Advisor

4

with the Board of Veterans' Appeals in Washington, D.C., at grade GS-14, step 6, position number 90052899. He resides in Potomac, Maryland; his residence address is omitted from the public caption and filed by simultaneous sealed notice pursuant to D.D.C. LCvR 5.1(c)(1).

16.    Plaintiff is directly and adversely affected by OPM's failure to issue the regulations required by 5 U.S.C. § 5538(d). His employing agency has denied him differential pay on the ground stated in OPM's guidance and foreclosed by *Feliciano*, and, so long as that guidance stands uncorrected and unreplaced by regulation, will have no authoritative instruction directing it to do otherwise the next time he is ordered to active duty.

17.    Defendant United States Office of Personnel Management ("OPM") is an independent agency of the United States headquartered in Washington, D.C. OPM is the Government's central human resources agency and is charged by 5 U.S.C. § 5538(d) with prescribing, in consultation with the Secretary of Defense, any regulations necessary to carry out the differential pay statute.

18.    Defendant Scott Kupor is the Director of the U.S. Office of Personnel Management and is sued in his official capacity. He was sworn in as Director on July 14, 2025. As Director, he is the official ultimately responsible for OPM's operations, including the issuance of the regulations required by 5 U.S.C. § 5538(d).

### FACTUAL ALLEGATIONS

### The Differential Pay Statute

19.    Tens of thousands of federal civilian employees also serve the Nation as military reservists. *Feliciano v. Dep't of Transportation*, 605 U.S. 38, 41 (2025). When called to active duty, these employees often receive less in military pay than they earn in their civilian federal jobs.

20.    To close that gap, Congress enacted 5 U.S.C. § 5538 on March 11, 2009. Pub. L. No. 111-8, div. D, tit. VII, § 751(a), 123 Stat. 524, 693–94 (2009); *see also* Pub. L. No. 111-117,

div. C, tit. VII, § 745(a), 123 Stat. 3034, 3219 (2009); Pub. L. No. 115-232, div. A, tit. VI, § 605, 132 Stat. 1636, 1795 (2018). The statute entitles a qualifying employee to a payment equal to the difference between the civilian basic pay he would otherwise have received and the military pay and allowances payable to him for his active duty service.

21. Section 5538(a) applies to an employee absent from federal civilian employment "in order to perform active duty in the uniformed services pursuant to a call or order to active duty under section 12304b of title 10 or a provision of law referred to in section 101(a)(13)(B) of title 10."

22. Section 101(a)(13)(B) of title 10 in turn reaches calls or orders to active duty under a list of enumerated provisions "or any other provision of law during a war or during a national emergency declared by the President or Congress."

23. Section 5538(d) provides: "The Office of Personnel Management shall, in consultation with [the] Secretary of Defense, prescribe any regulations necessary to carry out the preceding provisions of this section." The provision reads "in consultation with Secretary of Defense"; the omission of "the" appears in the enacted text and is reproduced here verbatim.

24. The word "shall" in § 5538(d) imposes a duty to act. The qualifier "any regulations necessary" speaks to the content and scope of the regulations OPM must prescribe; it does not make optional the decision whether to carry the statute into effect by regulation at all. Congress directed that the differential pay statute be implemented by regulation, in consultation with the Secretary of Defense, and committed to OPM only the judgment of what those regulations must say. OPM has not exercised that judgment; it has declined to make any regulations at all.

25. Congress assigned that duty to OPM because differential pay is administered across the entire federal workforce by scores of separate employing agencies. A uniform, binding rule

6

issued by the Government's central personnel agency is the mechanism Congress chose to ensure that the statutory entitlement means the same thing at every agency.

### *Feliciano* Rejects the "Substantive Connection" Test

26.     In *Feliciano v. Department of Transportation*, 605 U.S. 38 (2025), the Supreme Court resolved what § 5538 requires when a reservist serves on active duty during a national emergency.

27.     The question presented was whether § 5538 guarantees differential pay when a reservist serves on active duty while a national emergency is ongoing, or whether it requires proving a "substantive connection" between the service and a particular national emergency.

28.     The Court held that a federal civilian employee called to active duty under any other provision of law during a national emergency is entitled to differential pay without having to prove that his service bore a substantive connection to some particular emergency. 605 U.S. at 55; *see id.* at 39 (syllabus) ("Held: A federal civilian employee called to active duty pursuant to 'any other provision of law . . . during a national emergency' . . . is entitled to differential pay if the reservist's service temporally coincides with a declared national emergency without any showing that the service bears a substantive connection to a particular emergency."). The Court reversed the judgment of the Federal Circuit.

29.     *Feliciano* was decided on April 30, 2025.

30.     *Feliciano* therefore invalidated the interpretive premise on which the Government had been administering § 5538. Any regulation or guidance conditioning differential pay on a substantive connection between an employee's service and a particular national emergency, or excluding voluntary active duty under 10 U.S.C. § 12301(d) performed during a declared national emergency, is contrary to law.

7

**OPM Has Never Carried Out § 5538(d), and Has Not Conformed Its Guidance to *Feliciano***

31.     OPM has never promulgated any regulation carrying out § 5538. Title 5 of the Code of Federal Regulations — the title in which OPM's regulations appear — contains no provision implementing 5 U.S.C. § 5538 and no provision addressing the reservist differential. No provision of Title 5 refers to 10 U.S.C. § 12301(d).

32.     In place of the regulations Congress required, OPM administers the differential pay entitlement through a subregulatory document titled "OPM Policy Guidance Regarding Reservist Differential under 5 U.S.C. 5538," first issued in December 2009 and thereafter updated four times, none of which altered the 2009 definition of "qualifying active duty." These facts are drawn from the Government's own filings in *Kluge v. United States*, No. 1:19-cv-02618 (D.D.C.), as quoted in *Kluge v. Dep't of Homeland Sec.*, 60 F.4th 1361, 1366 (Fed. Cir. 2023).

33.     That guidance instructs employing agencies that "qualifying active duty does not include voluntary active duty under 10 U.S.C. 12301(d) or annual training duty under 10 U.S.C. 10147 or 12301(b)." OPM Policy Guidance Regarding Reservist Differential under 5 U.S.C. 5538, at 18 (orig. issued Dec. 8, 2009; rev. June 23, 2015).

34.     OPM issued that guidance as an interim measure pending the regulations, and said so on its face. The guidance states that "[p]ending issuance of regulations, agencies should follow this guidance in applying section 5538." OPM Policy Guidance Regarding Reservist Differential under 5 U.S.C. 5538, at 2 (orig. issued Dec. 8, 2009; rev. June 23, 2015). Where the statute left a term undefined, OPM supplied only an interim definition and reserved the governing one for the rulemaking: "OPM will provide a definition in its implementing regulations. In the meantime, agencies should use the definition . . . provided in this part." *Id.* at 23. OPM thus told employing

agencies from the outset that implementing regulations were forthcoming, and in the seventeen years since it has never issued them.

35.     The Government has described that guidance as "directed to and relied upon by the Federal agencies that must make the payments to qualifying employees," and has acknowledged that "legal consequences clearly flowed" from it and that it "instructed federal agencies on how to apply the differential pay statute, and thus affected the circumstances under which federal employees could qualify for payments under the statute." Filings of the United States in *Kluge v. United States*, No. 1:19-cv-02618 (D.D.C.), quoted in *Kluge*, 60 F.4th at 1366.

36.     OPM has not withdrawn, amended, rescinded, or superseded that guidance since *Feliciano* was decided. The guidance remains published on OPM's website, bearing a revision date of June 23, 2015.

37.     OPM has not published a notice of proposed rulemaking, an interim final rule, or any other Federal Register document addressing § 5538 in light of *Feliciano*.

38.     OPM has offered no explanation for its inaction and has announced no timetable for issuing the regulations § 5538(d) requires.

39.     The action required is not complex. Carrying out § 5538 in conformity with *Feliciano* requires OPM to promulgate a rule that does not condition the entitlement on a substantive connection to a particular national emergency and does not exclude voluntary active duty under 10 U.S.C. § 12301(d). It does not require new policy judgments, cost analysis, or the resolution of competing technical considerations. OPM has identified none, and none is apparent.

40.     Since *Feliciano* was decided, OPM has publicly identified no justification for its continued inaction. It has not attributed the delay to competing priorities in a queue of similar

matters or to a lack of resources, and it has announced no timetable for updating the guidance or issuing regulations.

41.    Approximately fifteen months have elapsed since *Feliciano* was decided on April 30, 2025.

### Plaintiff's Active Duty Service and the Denial of Differential Pay

42.    On September 9, 2016, Plaintiff was ordered to active duty under 10 U.S.C. § 12301(d) to attend training for newly appointed Judge Advocates. He served on active duty from October 2, 2016 through February 11, 2017, at Fort Benning, Georgia, and Charlottesville, Virginia, and then returned to his civilian position.

43.    On March 14, 2018, Plaintiff was again ordered to active duty under 10 U.S.C. § 12301(d), this time for operational support as a Trial Defense Counsel. He served on active duty from March 19, 2018 through September 30, 2018, at Fort Meade, Maryland, and then returned to his civilian position.

44.    On February 11, 2021, Plaintiff was again ordered to active duty under 10 U.S.C. § 12301(d), this time for operational support as a subject-matter-expert training developer for The Judge Advocate General's Legal Center and School in Charlottesville, Virginia. Because of COVID-19 precautions he performed that service virtually. He served on active duty from February 11, 2021 through May 12, 2021, and then returned to his civilian position.

45.    On July 31, 2021, Plaintiff was again ordered to active duty under 10 U.S.C. § 12301(d), this time in support of a contingency operation, Operation Enduring Freedom, serving as trial counsel with the Office of Military Commissions. He served at the Pentagon and at Naval Station Guantanamo Bay, Cuba, for approximately two years, through July 31, 2023, and then returned to his civilian position.

46.     National emergencies declared by the President were in force throughout each of those periods of service. *See* 81 Fed. Reg. 60579 (Sept. 1, 2016); 82 Fed. Reg. 43153 (Sept. 13, 2017); 83 Fed. Reg. 46067 (Sept. 12, 2018); 84 Fed. Reg. 48545 (Sept. 13, 2019); 85 Fed. Reg. 56467 (Sept. 11, 2020); 86 Fed. Reg. 50835 (Sept. 10, 2021); 87 Fed. Reg. 55897 (Sept. 12, 2022).

47.     For each period, Plaintiff's absence from the Department of Veterans Affairs was coded as military leave without pay, apart from the ordinary military leave to which he was entitled under 5 U.S.C. § 6323(a).

48.     In 2018 Plaintiff requested differential pay from the Department of Veterans Affairs for his 2016–2017 and 2018 periods of active duty. The agency denied those requests. It determined that he was ineligible "because his orders to report for active duty were issued pursuant to 10 U.S.C. § 12301(d), which, according to the agency, did not entitle the appellant to such remunerative benefits." *Colicelli v. Dep't of Veterans Affairs*, MSPB Docket No. DC-4324-19-0769-I-1, Initial Decision at 3 (Apr. 14, 2020). That is the position stated in OPM's guidance, and the position *Feliciano* later held to be contrary to law.

49.     Plaintiff obtained that pay only by appealing to the Merit Systems Protection Board, which granted corrective action on his differential pay claim on April 14, 2020. Neither party sought review of that ruling and it became final.

### Ongoing and Prospective Harm

50.     Plaintiff remains a Judge Advocate in the United States Army Reserve, remains a federal civilian employee of the Department of Veterans Affairs, and remains subject to being ordered to active duty under 10 U.S.C. § 12301(d). The Reserve Assignments and Mobilizations Office of The Judge Advocate General circulates requests for volunteers under § 12301(d) every month. Plaintiff has accepted four such assignments since 2016. He last accepted such an

11

assignment in 2021 and served on active duty through July 31, 2023. Continued abstention carries consequences for military readiness, for unit cohesion, and for his own opportunities for promotion. A further call to active duty under § 12301(d) is therefore a recurring and expected feature of Plaintiff's Reserve service.

51.     The national emergency declared by the President on September 14, 2001, in Proclamation 7463, with respect to the terrorist attacks of September 11, 2001, remains in force. It has been continued annually without interruption under section 202(d) of the National Emergencies Act, 50 U.S.C. § 1622(d), most recently on August 29, 2025, continuing it in effect beyond September 14, 2025. *See* Continuation of the National Emergency With Respect to Certain Terrorist Attacks, 90 Fed. Reg. 42695 (Sept. 3, 2025).

52.     OPM's guidance remains unrevised, and OPM has issued no regulation. The Merit Systems Protection Board has meanwhile held, in a precedential decision involving the same employing agency as Plaintiff's, that a federal civilian employee ordered to active duty under 10 U.S.C. § 12301(d) is entitled to differential pay under 5 U.S.C. § 5538(a) where that service temporally coincided with a declared national emergency. *Sopko v. Dep't of Veterans Affairs*, 2026 MSPB 1, ¶¶ 7–8 (Jan. 22, 2026). OPM's guidance continues to instruct employing agencies to the contrary.

53.     OPM has twice told the Supreme Court, through the United States, that it would revise the guidance. Opposing certiorari, the Government stated that "OPM has informed this Office that it intends to revise the guidance to be consistent with *Adams* and the position set forth in this brief." Br. in Opp. 18, *Feliciano v. Dep't of Transportation*, No. 23-861 (U.S. May 13, 2024). On the merits, after acknowledging that the guidance "takes a more restrictive view of the availability of differential pay than the one set forth in the government's briefs in this case," the

12

Government stated that "[i]n light of this Court's grant of certiorari, OPM plans to update the guidance based on the Court's decision in this case." Br. for the United States 25 n.4, *Feliciano*, No. 23-861 (U.S. Sept. 27, 2024). The Court decided *Feliciano* on April 30, 2025. OPM has not revised the guidance.

54.    When Plaintiff is next ordered to active duty under 10 U.S.C. § 12301(d), his employing agency will determine his entitlement to differential pay by reference to OPM's instructions. Those instructions state that such service does not qualify. That agency has already denied Plaintiff differential pay on that basis.

55.    That state of affairs is the direct consequence of OPM's failure to promulgate regulations. Had OPM discharged the duty § 5538(d) imposes, its instructions would carry the force of law and would bind employing agencies government-wide. Instead OPM substituted a non-binding subregulatory document for the binding rule Congress required. The result is that no employing agency is authoritatively directed to administer § 5538 as *Feliciano* construes it, and each reservist is left to vindicate his own entitlement agency by agency and activation by activation. The absence of a binding rule is not incidental to Plaintiff's injury; it is the injury.

56.    Plaintiff's injury is concrete, particularized, and — critically for the prospective relief he seeks — continuing into the future. It is fairly traceable to OPM's failure to discharge its duty under § 5538(d).

57.    The injury is redressable. An order compelling OPM to prescribe regulations carrying out § 5538 in conformity with *Feliciano* would supply the binding, government-wide instruction Congress directed and would remove the stated basis on which differential pay has been and will be denied to Plaintiff.

58.     Plaintiff has no adequate alternative remedy. No employing agency can order OPM to issue regulations, and no administrative forum is empowered to compel OPM to perform the rulemaking duty § 5538(d) imposes. *See supra* ¶ 12. Litigating entitlement one activation at a time before the Merit Systems Protection Board, as Plaintiff has already been forced to do once, neither corrects OPM's instructions nor prevents the next denial.

59.     Nothing short of the regulations § 5538(d) requires would afford Plaintiff complete relief. A revised guidance document, an interim statement of policy, a notice of proposed rulemaking, or the payment of differential pay to Plaintiff individually would each leave the statutory duty undischarged and would leave employing agencies without the binding rule Congress directed OPM to issue.

60.     OPM's continued inaction also harms the many other federal civilian employees who serve in the reserve components. Federal employing agencies routinely deny differential pay to reservists whose orders issue under 10 U.S.C. § 12301(d), and they do so because OPM's guidance instructs them that such service does not qualify. That is the ground on which Plaintiff himself was denied. It is the ground on which the Department of Veterans Affairs denied Michael Sopko, whose denial the Merit Systems Protection Board reversed only after *Feliciano*. It is the instruction OPM continues to publish today. And it is the understanding the Government itself has described, in explaining that OPM's guidance is "directed to and relied upon by the Federal agencies that must make the payments to qualifying employees." *Kluge v. Dep't of Homeland Sec.*, 60 F.4th 1361, 1366 (Fed. Cir. 2023). Congress enacted § 5538 precisely so that these employees would not bear a financial penalty for answering a call to service.

61.     That pattern is not confined to Plaintiff's employing agency. In litigation brought after *Feliciano* to recover unpaid reservist differential, the United States Court of Federal Claims

certified a class of "[a]ll federal employees who, at any time from May 6, 2019, through the present, were not paid the difference between their federal civilian salary and their military pay during their time spent in active duty." *Platero v. United States*, Nos. 25-782, 25-1245, slip op. at 15–16 (Fed. Cl. Mar. 18, 2026). More than thirty plaintiffs had joined the case, and employees of four separate federal agencies submitted declarations stating that each "was denied reservist differential pay on the same basis." *Id.* at 11. The court found that "[t]he government refused to act on grounds applicable to the putative class." *Id.*

## CLAIMS FOR RELIEF

### *FIRST CLAIM FOR RELIEF*
### Violation of the Administrative Procedure Act—
### Agency *Action* Unlawfully Withheld or Unreasonably Delayed

62.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

63.    This claim arises under the APA, 5 U.S.C. § 706(1), which directs that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." The APA separately provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." *Id.* § 555(b).

64.    Section 5538(d) imposes on OPM a discrete agency action that it is required to take. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."). The duty is discrete because it is a single, identifiable act — prescribing regulations — and it is legally required because § 5538(d) says OPM "shall" perform it.

65.     *Feliciano* established that regulations conditioning differential pay on a substantive connection between an employee's service and a particular national emergency are contrary to § 5538. Regulations necessary to carry out § 5538 are therefore, at a minimum, regulations that do not impose that requirement.

66.     OPM has failed to discharge that duty. It has never issued the regulations at all, and the subregulatory guidance it uses in their place remains unrevised fifteen months after *Feliciano*, continuing to instruct employing agencies to deny differential pay on a ground the Supreme Court has rejected.

### The APA's text supplies the governing standard.

67.     The standard the APA prescribes is reasonableness. Section 706(1) asks whether agency action has been "unreasonably delayed," and § 555(b) requires the agency to act "within a reasonable time." Those provisions leave no gap for a court to fill and no heightened showing to invent.

68.     Measured against that standard, OPM's delay is unreasonable. OPM has never performed a duty Congress imposed seventeen years ago; it has allowed fifteen months to pass since the Supreme Court held its operative instruction contrary to law; the corrective action required is straightforward; OPM has offered no justification and no timetable; and in the meantime reservists are denied pay Congress guaranteed them.

69.     The six-factor framework of *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"), does not govern and should not be applied. The *TRAC* factors were drawn from mandamus practice rather than from the text of the APA, and in application they have come to impose a threshold of egregiousness that Congress did not enact.

16

Plaintiff respectfully submits that a § 706(1) claim is governed by the statute's own reasonableness standard.

### In the alternative, OPM's delay is unreasonable under *TRAC*.

70.     Without conceding that *TRAC* states the correct standard, and expressly preserving the contention that it does not, Plaintiff alleges in the alternative that each *TRAC* factor confirms that OPM's delay is unreasonable:

(a) The time an agency takes to decide must be governed by a "rule of reason." *TRAC*, 750 F.2d at 80. OPM has never issued the regulations at all, and has let fifteen months pass since *Feliciano* without taking any step toward them. No rule of reason accommodates indefinite inaction on the required rulemaking.

(b) Where Congress has indicated the speed with which it expects an agency to proceed, that scheme may supply content for this rule of reason. *TRAC*, 750 F.2d at 80. Congress used mandatory language in § 5538(d) and tied the duty to a benefit payable contemporaneously with military service. Congress did not contemplate open-ended delay, still less permanent nonperformance.

(c) Delays tolerable in the sphere of economic regulation are less tolerable where human welfare is at stake. *TRAC*, 750 F.2d at 80. What is at stake is the pay of men and women called from their civilian jobs to active military service — precisely the hardship Congress enacted § 5538 to prevent.

(d) Expediting the required action would not displace agency activities of a higher or competing priority. *TRAC*, 750 F.2d at 80. Conforming OPM's instructions to *Feliciano* requires removing a requirement the Supreme Court has held unlawful, not resolving competing technical or policy questions, and OPM has identified no competing priority.

(e) The nature and extent of the interests prejudiced by delay are substantial. *TRAC*, 750 F.2d at 80. Every day OPM's instructions remain uncorrected, reservists across the federal workforce are denied pay Congress guaranteed them, on a ground the Supreme Court has held unlawful.

(f) No showing of impropriety is required. *TRAC*, 750 F.2d at 80. Plaintiff need not establish bad faith; the delay is unreasonable on its face.

71.　　OPM's failure to act constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of 5 U.S.C. § 706(1).

72.　　Declaratory and injunctive relief compelling OPM to prescribe the regulations § 5538(d) requires is necessary to remedy the ongoing violation and to protect Plaintiff's rights under federal law.

### SECOND CLAIM FOR RELIEF
### Mandamus, 28 U.S.C. § 1361

73.　　Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

74.　　By never prescribing the regulations required to carry out the differential pay statute, and by failing for fifteen months since *Feliciano* to correct instructions the Supreme Court has held contrary to law, Defendants have disregarded a clear, non-discretionary duty. *See* 5 U.S.C. § 5538(d).

75.　　Mandamus is warranted "to correct transparent violations of a clear duty to act" by federal officials. *In re Aiken County*, 725 F.3d 255, 258 (D.C. Cir. 2013) (quoting *In re American Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004)).

76.     Plaintiff has a clear right to relief, Defendants have a clear duty to act, and no other adequate remedy is available. Mandamus is necessary to compel performance of Defendants' clear, non-discretionary duty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A. Declare, pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706(1), that Defendants have unlawfully withheld and unreasonably delayed the issuance of the regulations required by 5 U.S.C. § 5538(d), and that any OPM regulation or guidance conditioning differential pay on a substantive connection between an employee's service and a particular national emergency, or excluding voluntary active duty under 10 U.S.C. § 12301(d) performed during a declared national emergency, is contrary to law;

B. Order Defendants, pursuant to 5 U.S.C. § 706(1) and 28 U.S.C. § 1361, to prescribe and publish regulations carrying out 5 U.S.C. § 5538 in conformity with *Feliciano* within a specified and reasonable period of time to be set by the Court on the record of this case;

C. Retain jurisdiction to monitor compliance with the Court's order;

D. Award Plaintiff his reasonable costs and disbursements associated with this action, including attorney's fees as permitted by law; and

E. Grant such other and further relief as the Court deems just and proper.

Dated: August 12, 2026                          Respectfully submitted,

                                                */s/ Andrew Tutt*
                                                R. Stanton Jones (D.C. Bar No. 987088)
                                                Andrew T. Tutt (D.C. Bar No. 1026916)
                                                TRIAL LAWYERS FOR JUSTICE
                                                421 W. Water Street
                                                Decorah, IA 52101
                                                (202) 490-7080
                                                stanton@tl4j.com
                                                andrew@tl4j.com

                                                Brian J. Lawler (pro hac vice forthcoming)
                                                PILOT LAW, P.C.
                                                4632 Mt. Gaywas Drive
                                                San Diego, CA 92117
                                                (619) 255-2398
                                                blawler@pilotlawcorp.com

                    *Counsel for Plaintiff Marcus Colicelli*